No. 28319

**People of the State of Colorado ex rel. Robert Gallagher, Jr., Special Prosecutor v. Sanford B. Hertz**

(608 P.2d 335)

Decided November 19, 1979.

---

Robert R. Gallagher, Jr., District Attorney; Michael S. Kaminski, for complainant.

Keller, Dunievitz & Johnson, Alex Stephen Keller, for respondent.

*En Banc.*

JUSTICES GROVES and DUBOFSKY delivered the opinion of the Court.

This is a disciplinary matter involving the respondent-attorney. After an extensive hearing,[1] our Grievance Committee found that the respondent had violated the standards established by C.R.C.P. 241(B)(4) and the following sections of the Colorado Code of Professional Responsibility: DR 1-102(A)(4), (5) and (6); DR 7-105; and DR 8-101(A)(2). Rule 241(B)(4) provides that conduct violating the highest standards of honesty, justice or morality may constitute cause for discipline. DR 1-102(A) provides in part that a lawyer shall not:

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

DR 7-105 proscribes a lawyer's threat "to present criminal charges solely to obtain an advantage in a civil matter." DR 8-101(A)(2) states that a lawyer who holds public office shall not use his "public position to influence, or attempt to influence, a tribunal to act in favor of himself or of a client."

The Grievance Committee recommended that we suspend the respondent from the practice of law for a period of one year and assess him with the costs of the proceedings.[2]   We have concluded that the findings under

---

[1] The record of proceedings before the Grievance Committee, which were not folioed, exclusive of the pleadings consist of over 600 pages of transcript of testimony and seven pounds of documentary exhibits.

[2] The proceedings were conducted before a three-person hearing Committee. The Committee's findings, conclusions and recommendation were reviewed by a panel of the Grievance Committee. Two members of the Committee recommended one-year suspension and the remaining member recommended public censure. Of the seven members sitting in the panel, six recommended one-year suspension and one recommended six-months suspension. Members of the Committee and the panel were unanimous in their recommendation of assessment of costs.

241 (B) (4), DR 1-102(A)(5) and DR 7-105 should be approved, but that we cannot approve the findings under DR 1-102(A)(4) and (6) and DR 8-101(A)(2). Our partial disapproval does not require necessarily a reduction of the extent of discipline. We have concluded, however, the proper discipline should be and is suspension for six months and payment of costs.

A number of the facts which we recite are disputed. As to these, we follow and approve the findings of the Committee.

The respondent was admitted to practice in Colorado in 1955. Thereafter, he was on the staff of the United States Securities and Exchange Commission until 1957. Since then he has practiced law in Colorado. On January 11, 1973, upon application of the Denver District Attorney, the respondent was appointed by Judge Kingsley of the Denver District Court as Special Fraud Consultant to the office of the Denver District Attorney. He had the status and authority of a special prosecutor and continued to occupy that position until March 13, 1974.

On September 26, 1973, Judge Kingsley appointed the respondent as receiver for Huskin and Company and numerous related entities. The appointment was pursuant to a complaint filed by the Colorado Division of Securities. Throughout the receivership respondent acted as both receiver and attorney for the receiver. The assets of Huskin and Company consisted of approximately $23,000,000 in real estate, in which the company had an equity of approximately $7,000,000. There were 29 related real estate partnerships, consisting of approximately 1300 partners. Judge Kingsley testified at the grievance hearing that respondent did a commendable job of collecting all the assets of the company and unwinding the merger of the assets.

On October 2, 1973, within a week of the time respondent was appointed receiver in the Huskin matter, respondent met with John David Huskin of Huskin and Company and two of his attorneys. The respondent stated that he had discovered evidence of criminal acts on the part of Mr. Huskin and that, "We are going to prosecute you." One of Huskin's attorneys stated, "I thought you were the receiver?" Respondent replied, "I am also the special prosecutor for security fraud. This week I am receiver." Another version of the statement by respondent was, "Well, I'm the receiver today, and next week I'm the special prosecutor." The respondent admitted that he made the statement, testified that he was in error and was remorseful, adding that his statements were made in a heated exchange.

The subject of criminal prosecution against Huskin was further discussed by respondent and Huskin's attorneys, and respondent stated that he expected his opinion on whether to institute criminal proceedings would carry weight in the district attorney's office. The risk of criminal prosecution was of great concern to Huskin and was a factor influencing his attorneys' recommendations concerning settlement in the receivership action. Later, and after a decision had been made as to some of the issues in the receivership, the respondent telephoned the special prosecutor of major fraud cases in the Denver District Attorney's office four or five times. The Committee found the special prosecutor's testimony "highly credible and unrebutted." Some of this was:

"With respect to John David Huskin, Mr. Hertz on several occasions clearly indicated an expectation that I would file an information against John David Huskin and expressed displeasure that I had not done so already and offered his assistance in whatever way he could to help me prepare an information or whatever else was necessary to get Mr. Huskin in jail."

As receiver in the Huskin matter, respondent discovered what he believed to be conversion by Carl Hyde and Doug Morris of property belonging to one of the related partnerships. On October 31, 1973 the respondent met with them and told them that he had grounds to file felony charges and that Hyde's real estate license could be suspended. He also stated that no criminal prosecution would occur if they repaid approximately $4,200 which respondent claimed was due to Huskin or the partnership. Later respondent filed action against them for fraud, breach of fiduciary duty, past-due rent and civil conspiracy. In the meantime, the respondent had demanded of the special prosecutor that a criminal complaint be filed against Hyde and Morris. The Committee found the following testimony of the prosecutor "highly credible and unrebutted":

"With respect to them, there's no question that Sandy Hertz wanted them in jail immediately and he wanted me to file a criminal information immediately so that they would be in jail in the first instance, over the holidays; in the second instance, on the night of January 2nd; and in the third instance, on the 4th or 5th so they would be in jail over the weekend — the following weekend."

Morris settled the civil action by payment of $2,000 and testified that one factor influencing him to settle the case was respondent's threat of felony charges.

We have no hesitancy in approving the Grievance Committee finding that the conduct of the respondent violated the highest standards of honesty, justice or morality. His threats of criminal prosecution under the circumstances clearly support this violation. DR 7-105 proscribes threatening "to present criminal charges solely to obtain an advantage in a civil matter." Respondent does not deny the threats, but argues that they

were not *solely* to obtain advantage in the receivership. However, we find the advantage sought by the respondent was to obtain Huskin's agreement to allow the receiver, without opposition, to unwind the merger of the partnership assets. His threats to Hyde and Morris were intended to force settlement of disputed property claims in one of the related partnerships.

Further, we find that respondent attempted to follow through on his threats of criminal prosecution by his communication with the Denver District Attorney's office. Although it is the duty of a receiver to report evidences of criminal conduct to the district attorney, here respondent vigorously advocated the criminal prosecution he had earlier threatened. Respondent went far beyond the acceptable limits of simply informing the responsible official of a suspected crime and allowing that official to conduct his own investigation and reach his own conclusion. Respondent took advantage of his position of respect and status in the Denver District Attorney's office by repeatedly urging criminal prosecution in matters where his only legitimate professional interest could be in related civil matters. Such actions are prejudicial to the administration of justice in violation of DR 1-102(A)(5).

We frequently discipline attorneys in private practice for threatening to go to a district attorney with criminal charges in order to obtain cooperation in a pending civil matter. In respondent's case, we have one who could be perceived to be a prosecuting attorney threatening criminal prosecution while negotiating a receivership matter. Once respondent accepted both the duties of a special fraud prosecutor in the securities area and, simultaneously, the duties of receiver and attorney for the receiver in a major securities matter, he had a special duty to separate his civil and criminal functions. The evidence clearly indicates that he did not separate these functions; indeed, he used his dual role, and the knowledge of Huskin, Hyde and Morris of that dual role, to attempt to gain an advantage in the receivership.

The remaining violations found by the Grievance Committee were misrepresentations by respondent of the basis for calculating attorneys' fees, conduct that adversely reflected on his fitness to practice law, and his use of public office to influence, or attempt to influence, a tribunal to act in favor of himself or of a client. For reasons set forth below, we do not uphold the Committee's findings in these areas.

Respondent periodically submitted petitions to Judge Kingsley requesting approval of receiver's fees. In these, he asked for interim allowance for fees in a specific amount and stated that he had expended approximately a specific number of hours in connection with his work as a receiver. Respondent had been paid $242,000 for his services as receiver and attorney for the receiver at the time of the grievance hearing. By dividing the amounts claimed by the number of hours, it appears that the petitioner requested $50 an hour for each hour claimed.

■ There was no agreement or order as to the hourly charge. Respondent told the Colorado Securities Commissioner, who was nominal plaintiff in the Huskin action, and two assistant attorneys general representing the Commissioner that he had time records to support his fee application. He, in fact, did not have time records, and he simply had made an after-the-fact estimation of his time. The Committee found this to be an implicit representation of the basis for his fee request. The Committee made the following conclusion:

"With no effective outside check on his record keeping or representations, the Respondent owed a higher than normal duty to account for his fees scrupulously. Having allegedly elected a barely credible method of calculating time spent, Respondent owed the court and other parties involved the clearest possible explanation of his methods."

We agree. It is not the best practice to estimate the time spent as the basis for a fee, especially when the fee is large and the attorney is acting as a public servant. However, here, those in a role to supervise and limit the fee did not require supporting documentation. Therefore, we do not discipline respondent for failing to have contemporaneous time records in support of his fee request.

■ The Committee did not elaborate on its reasons for finding the respondent unfit to practice law under DR 1-102(A)(6) or for finding him in violation of DR 8-101(A)(2), using a "public position to influence, or attempt to influence, a tribunal . . . ." It is true that respondent's statements and conduct were not fitting in the sense that they were unprofessional and inappropriate. But in the ordinary sense of section (6), it was not shown that this respondent was unfit to practice law. Counsel for the complainant suggests that the Committee had the district attorney's office in mind as the tribunal. We agree with counsel for the respondent that it was not our intent in adopting this canon to treat a district attorney or those acting under him as a tribunal. Therefore, we do not uphold the Grievance Committee findings under DR 1-102(A)(6) or DR 8-101(A)(2).

Because of our findings that respondent violated C.R.C.P. 241(B)(4) and DR 1-102(A)(5) and 7-105, we regard the proper disposition of this matter to be a six month suspension.

It is ordered that the Respondent, Sanford B. Hertz, be and he is hereby suspended for the practice of law as a member of the Colorado Bar for a period of six months from January 1, 1980, and that he pay the costs herein in the amount of $2,440.26 to the Clerk of this Court within 90 days.

JUSTICE ERICKSON does not participate.