In the Disciplinary Matter Involving
James F. VOLLINTINE,
Respondent.

No. 6984.

Supreme Court of Alaska.

Nov. 10, 1983.

**756**

Richard J. Ray, Alaska Bar Ass'n, Anchorage, for appellant.

Marc Grober, Nenana, for respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

**PER CURIAM.**

This is a disciplinary proceeding against an attorney, James F. Vollintine. Vollintine is accused of professional misconduct, consisting of statements that he made in letters to two federal officials. We conclude that Vollintine's conduct was improper, and sufficiently serious to require public censure by this court.

The proceeding against Vollintine was initiated by the Alaska Bar Association, following receipt of a complaint from Jack M. Allen, Regional Solicitor for the United States Department of the Interior. Allen complained of statements contained in a letter from Vollintine to George Gustafson, Townsite Trustee for the Bureau of Land Management, copies of which had been sent to Allen and others. [Appendix A] The letter was dated December 2, 1980.

At the time that he wrote the letter, Vollintine represented the plaintiffs in a federal quiet title and ejectment action, involving a dispute over lands in and around certain Alaska Native villages. *See Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496 (9th Cir.1980). The defendants in that action included the Secretary of the Interior, Gustafson and others.

In his letter, Vollintine accused Gustafson and another B.L.M. official of "perjury," asserted that the Secretary of the Interior had committed fraud, alleged that Allen was "cheating and lying" in briefs filed in federal court, and complained of other forms of wrongdoing on the part of federal officials. He warned that Gustafson and Allen might find themselves "criminally liable" and "personally liable in tort," stating: "If [you] . . . and Allen think you are going to walk away from this townsite matter unscathed, you are wrong."

In a second letter, dated February 5, 1981, Vollintine wrote to James Watt, Secretary of the Interior. [Appendix B] Vollintine criticized Gustafson, Allen and Curt McVee, another department official, stating

that McVee "is a complete incompetent, ... responsible for screwing up land titles in Alaska, ... a blatant racist, ... [and a person who] constantly creates friction between [Alaska] Natives and non-Natives." Allen was also labelled "an incompetent" and "a pathological liar," and was said to have "the reputation of supporting any position of the local B.L.M. office no matter how deceitful or contrary to law." Gustafson, Allen and McVee were all described as "lifer parasites" who should be replaced.

The Disciplinary Board of the Alaska Bar Association,[1] adopting a Hearing Committee recommendation, concluded that Vollintine was guilty of unprofessional conduct worthy of public censure. [Appendix C] Specifically, the Board found that his actions violated Disciplinary Rules 1–102(A)(5), 7–102(A)(1), and 7–105(A), of the Code of Professional Responsibility. The matter was then submitted to this court, pursuant to Rule II–15(j), Alaska Bar Rules.

## JURISDICTIONAL ISSUES

■ Vollintine raises three "jurisdictional" issues, contending: (1) that the Hearing Committee was improperly constituted because of the method of the selection of its members; (2) that he is not subject to discipline under the Alaska Bar Rules in this instance, because his alleged misconduct related to matters within the jurisdiction of a federal tribunal; and (3) that Allen, one of those about whom he wrote, is

not admitted to practice in Alaska and, therefore, was not entitled to the same treatment due opposing counsel. We have reviewed each of these arguments and conclude that they are entirely without merit.[2]

## FREEDOM OF SPEECH

■ Likewise, we reject Vollintine's claim that the imposition of discipline in this instance violates his right of free speech.

■ In *Gregoire v. National Bank of Alaska*, 413 P.2d 27, 43 (Alaska 1967), this court administered a public reprimand when an attorney "employed abusive and intemperate language in his brief and ... accused the trial court and opposing counsel of unethical and underhanded conduct." Here, the situation is much the same.[3] We subscribe to the view stated by Justice Stewart, in his concurring opinion in *In Re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959):

> [A] lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards.
>
> Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech.

1. When fulfilling its responsibilities under the Bar Rules, the Board of Governors serves as the Bar's "Disciplinary Board." Rule II–13(a), Alaska Bar Rules.

2. With regard to argument (2), we note that an attorney is required to conduct himself in a professional manner *at all times:*

    The license to practice law in Alaska is, among other things, a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and counselor, and as an officer of the courts. It is the duty of every member of the bar of this State to act at all times in conformity with standards imposed upon members of the Bar as conditions for the privilege to practice law. These stan-

dards include, but are not limited to, the code of professional responsibility, and the code of judicial conduct, that have been, and any that may be from time to time hereafter, adopted or recognized by the Supreme Court of Alaska.

Rule II–9, Alaska Bar Rules.

3. Vollintine attempts to distinguish *Gregoire,* because there "[t]he improper language was found to be (1) contained in the briefs themselves; (2) aimed at the trial judges in the case under review; and (3) unfounded." According to Vollintine, none of those elements exist here. While the cases do involve somewhat different facts, the spirit of our holding in *Gregoire* applies.

360 U.S. at 646–47, 79 S.Ct. at 1388, 3 L.Ed.2d at 1489.[4]

## DUE PROCESS

Vollintine also complains that the Disciplinary Rules under which he was cited are overbroad and void for vagueness. The Bar Association argues that those rules incorporate a "reasonable attorney" standard, which gave Vollintine adequate notice of the type of conduct prohibited. *See Committee on Professional Ethics v. Durham,* 279 N.W.2d 280 (Iowa 1979) (DR 1–102(A)(6) held not void for vagueness).

The Code of Professional Responsibility is necessarily written in broad terms. It would be extremely difficult, if not impossible, to develop standards specifically detailing all forms of attorney misconduct. Although capable of broad interpretation, we believe the meaning of the Disciplinary Rules cited in this case is sufficiently clear to satisfy the requirements of due process.

## ETHICAL VIOLATIONS

The Disciplinary Board, as did the Hearing Committee, found that Vollintine's letter of December 2, 1980, violated Disciplinary Rule 7–105(A): "A lawyer shall not ... threaten to present criminal charges solely to obtain an advantage in a civil matter." This finding, we believe, is supported by the record.

The threat of criminal charges is implicit in the language used. Moreover, we can perceive of no purpose for the letter other than to influence the B.L.M.'s handling of a non-Native application for land in the Village of Aleknagik, the rejection of which would provide an advantage to Vollintine's clients. Such conduct, we believe, was well within the purview of DR 7–105(A).[5]

Vollintine was also found to have violated Disciplinary Rule 1–102(A)(5): "A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice." Again, we believe this finding is supported by the record.

There can be little question that his letters served only to make an already difficult situation worse. The natural consequence of those letters would be to cause an even greater deterioration in the relationship between his clients and their opponents. Regardless of the merits of his position, or that of his clients, a lawyer's use of such tactics is necessarily prejudicial to the orderly administration of justice. Among the Ethical Considerations found in the Code of Professional Responsibility, we find guidance in the statement: "Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system." EC 7–37, Code of Professional Responsibility. Although this particular Ethical Consideration is located in another part of the Code of Professional Responsibility, it states a fundamental principle applicable to all parts of the Code.[6]

Finally, Vollintine was found to have violated Disciplinary Rule 7–102(A)(1): "A lawyer shall not ... take ... action on behalf of his client, when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." This finding was based upon the Disciplinary Board's conclusion that

> he knew or should have known that [his] action would serve merely to harass or maliciously injure another, Jack Allen. The action referred to includes the underlining of inflammatory words; the wide dissemination of the letter of December 2, 1980, and the writing of the letter dated February 5, 1981, not copied to Mr.

---

4. Vollintine criticizes this view, characterizing it an "elitist concept promoted by Justice Stewart." If that is indeed the case, we, nevertheless, consider the concept sound.

5. In our view, the fact that Vollintine believed in the truth of his allegations, as found by the Disciplinary Board, is no excuse.

6. "Ethical Considerations are aspirational in character and represent the objectives toward which every member of the [legal] profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in very specific situations." Preliminary Statement, Code of Professional Responsibility.

Allen, both of which would serve to maliciously injure Mr. Allen. [Appendix C at 5]

It is clear that the letters, despite Vollintine's assertions to the contrary, were written on behalf of his clients. Moreover, it should be obvious to any lawyer that intemperate statements of the sort contained in Vollintine's letters can serve no real purpose but to harass the objects of his wrath. While the letters themselves might have served some greater purpose, the inclusion of those statements did not. Again, we find Vollintine's conduct to be well within the purview of the applicable Disciplinary Rule, DR 7–102(A)(1).

■■■ James F. Vollintine is hereby censured for violation of the above mentioned provisions of the Code of Professional Responsibility.[7]

APPENDIX A

JAMES F. VOLLINTINE

ATTORNEY AT LAW

420 "L" STREET, SUITE 405

ANCHORAGE, ALASKA 99501

907–276–8144

December 2, 1980

George Gustafson, Townsite Trustee
Bureau of Land Management
United States Department of the Interior
701 "C" Street, Box 13
Anchorage, Alaska 99513

Re: *Aleknagik Townsite, USS 4873*

Dear Mr. Gustafson:

Enclosed is my entry of appearance as attorney of record for Aleknagik village in all matters regarding the Aleknagik townsite. This means that in the future you must send me copies of all correspondence,

etc. that you send to any individual or entity concerning the Aleknagik townsite.

As you know, Roland Moody has applied for Lots 7 and 8, Block 8, Tract A, Aleknagik Townsite. According to the application filed with your office, he moved a 14 × 16 house on the land on April 6, 1980. He claims that he cleared the land in 1970 but Mr. Ilutsik of Aleknagik says that such is untrue.

Mr. Moody moved the building onto the land at a time when there was an outstanding injunction issued by the Ninth Circuit Court of Appeals on June 22, 1979 which directed the Department of the Interior to prevent occupancy claims within the Aleknagik townsite. Jack Allen wrote to Mr. Moody on May 8, 1980 informing him that he may be in trespass. Mr. Allen, however, has not followed up on the matter. On November 18, 1980 he wrote to Wassillie Ilutsik and advised him that no action would be taken against Mr. Moody until you further investigated his claim, and until your jurisdiction has been clearly established by the courts in the *Aleknagik* and *Klawock* cases. Mr. Allen, therefore, is knowingly violating the Ninth Circuit's order.

There are other reasons why Mr. Moody's claim to the land must fail. One major reason is that non-Natives are not entitled to rights in Native townsites. Yourself and the BLM have long been illegally administering the Alaska townsite laws by attempting to authorize non-Native occupancy claims in Native villages.

Another reason that Mr. Moody's claim is invalid is that the Interior Board of Land Appeals ruled on January 17, 1980 that the repeal of the townsite laws on October 21, 1976 closed Alaska townsites to occupancy claims as of that date. See *Royal Harris,* 45 IBLA 87 (1980). Since Mr. Moody did

---

**7.** The Hearing Committee's report included a finding that Vollintine's actions also constituted misconduct under Disciplinary Rule 1–102(A)(6): "A lawyer shall not ... [e]ngage in ... conduct that adversely reflects on his fitness to practice law." The Disciplinary Board, however, made no such finding; its report contains no reference to DR 1–102(A)(6). We, therefore, elect not to comment on this issue, except to say that we have not considered it in reaching our decision to censure Vollintine.

not have any improvements on the land as of October 21, 1976, his claim must fail.

Finally, the Ninth Circuit ruled in the *Aleknagik* case that there is a substantial probability that the vacant land in the Aleknagik townsite was withdrawn under ANCSA for Native selection. This too would bar Mr. Moody's claim.

The other day when I was in your office some representatives from the State of Alaska were there inquiring about obtaining land or a right-of-way within the Aleknagik townsite. You are hereby reminded that on June 22, 1979 the Ninth Circuit closed the Aleknagik, Ekwok and Nondalton villages to any sort of occupancy claims and directed the Department to prevent entries, and to notify members of the public that the townsites are closed. Enclosed is a copy of that order.

I advise yourself, the BLM and Mr. Allen to tread softly with these Native townsites. As you know, it is our position that the Secretary *fraudulently* determined that townsites in Native villages are "valid existing rights" under ANCSA. Then he opened them up to the general public under your screwy, unpublished policy of holding subdivided areas for Natives and unsubdivided areas for non-Natives. I have your's and McVee's deposition and I believe that I can establish that both of you committed *perjury* in testifying under oath about these townsites. In fact, there is absolutely no question that you committed *perjury* in stating in an affidavit before the 9th Circuit that "44 townsites were subdivided after ANCSA." Jack Allen is *cheating* and *lying* in briefs before the 9th Circuit in a desperate attempt to justify the Department's townsite policies and save his neck in the *Alaeknagik* case. He is merely buying time. Allen has lied to me all along in this townsite case. Yourself, McVee and Allen may well find yourselves criminally liable in this matter. In addition, your blatant violation of Native rights under ANCSA and the townsite laws may make all three of you personally liable in tort for intentional violation of the Natives' 5th Amendment rights. What a monstrous act the BLM

committed in keeping these townsites from Native selection, then opening them up to the general public in a negligent, haphazard way, without any consideration for the law, the villages' rights, or land use policy, etc. You have completely gummed up land titles in Native townsites. The Interior Department has Jack Allen to lie in Court for it, but that can only last so long. Allen is attempting to blame everything on the Court, but, as you will see, the Courts will finally straighten this matter out. If yourself, McVee, and Allen think you are going to walk away from this townsite matter unscathed, you are wrong.

Please take prompt action on Mr. Moody's application so we can get this matter over with. Be sure to give us adequate notice as to when you will be in Aleknagik so we can have representatives attend your meeting with Mr. Moody.

Sincerely yours,
/s/ James Vollintine
James F. Vollintine

JFV:ksl

cc: Wassillie Ilutsik
    Tom Hawkins
    Jack Allen
    AFN
    Curt McVee
    Bob Arnold
    Secretary of the Interior

APPENDIX B

James F. Vollintine

Attorney at Law

420 "L" Street, Suite 405

Anchorage, Alaska 99501

907–276–6144

February 5, 1981

Honorable James Watt
Secretary of the Interior
18th & "C" Street, N.W.
Washington, D.C. 20240

Re: John M. Allen, Alaska Regional Solicitor Curtis *V. McVee, BLM State Director*

Dear Mr. Watt:

Please accept my congratulations on your appointment as Secretary of the Interior. I am a life-long Alaskan and have been practicing law here since 1974. Approximately 50% of my work involves representing Alaska Native interests before the Department of the Interior. I appreciate your statements that you will attempt to cleanse the Department of as much mismanagement, waste and fraud as possible.

In my opinion, you should fire or relocate Messrs. Allen and McVee. McVee has been the State Director for about 10 years, and Acting State Director before then. He is a complete incompetent and is responsible for screwing up land titles in Alaska. In addition, he is a blatant racist. Under his leadership the BLM kept 98 native villages open to entry by the general public under the townsite laws, in violation of the 1971 Alaska Native Claims Settlement Act and the 1926 Alaska Native Townsite Act. The Department was badly burned on this issue in *Aleknagik, et al. v. Andrus,* No. 2896 (9th Cir.) April 7, 1980. McVee constantly creates friction between Natives and non-Natives. Some BLM employees have informed me that he is even more hard-line against the Natives than is the Washington office.

Jack Allen has been the Regional Solicitor since 1975. He is not only an incompetent, but also a pathological liar. He has the reputation of supporting any position of the local BLM office no matter how deceitful or contrary to law. As a result, he has created a lot of problems and has absolutely no credibility with anyone in Alaska, not even the Interior Department.

Since the Department has such massive responsibilities in Alaska, I am hopeful that you will take a sharp look at the Interior affairs up here. In addition to McVee and Allen, Sue Wolf, BLM adjudication, and George Gustafson, townsite trustee, should also get the axe. Only by ridding the Department of these lifer parasites can true policy changes take place. I believe you would do the Country a great service by dismissing or transferring these individuals. Thank you.

Sincerely yours,
/s/James Vollintine
James F. Vollintine

JFV:ksl

## APPENDIX C
### BEFORE THE ALASKA BAR ASSOCIATION

| | |
|---|---|
| In the Disciplinary Matter Involving | ) ) ) |
| JAMES F. VOLLINTINE, | ) ) |
| Respondent. | ) ) ) |

ABA File No. 80–140

### REPORT OF THE DISCIPLINARY BOARD OF THE ALASKA BAR ASSOCIATION

Following oral argument on May 18, 1982, the Disciplinary Board of the Alaska Bar Association, consisting of Andrew J. Kleinfeld, Harold M. Brown, William B. Rozell, Hugh G. Wade and Elizabeth P. Kennedy met and made the following decision:

The Board accepts the introduction of the Hearing Committee Report.

### FINDINGS OF FACT

1. Respondent James F. Vollintine is, and at all times relevant to this proceeding has been, an attorney at law admitted to practice in the State of Alaska and a member of the Alaska Bar Association.

2. During the period commencing on or about September, 1977, and continuing through the date of the hearing, Respondent represented nine native entities in litigation against the Secretary of Interior, George E.M. Gustafson and others, such litigation being hereinafter referred to as the *Aleknagik* case.

3. Jack Allen is an attorney admitted to practice in the District of Columbia but not a member of the Alaska Bar Association.

4. George Gustafson is the Townsite Trustee for the Bureau of Land Management.

5. Jack Allen, as Regional Solicitor, represents George Gustafson, Curt McVee and the Secretary of the Interior as his clients and in that capacity was acknowledged by Respondent to be the principal author of the briefs filed on behalf of the government in the *Aleknagik* case and otherwise primarily responsible for the litigation. (Exhibit B) Court proceedings related to that litigation are, however, generally handled by the U.S. Attorney.

6. Respondent prepared a letter dated December 2, 1980, a copy of which is Exhibit A to the Petition, to George Gustafson concerning matters which related to the *Aleknagik* case and the enforcement of an interim injunction prohibiting new entries onto the Aleknagik Townsite. In that letter, Respondent alleged that Mr. Allen had been *"cheating"* and *"lying"* in briefs, that the Secretary of Interior had *fraudulently* determined townsites were valid existing rights under ANCSA, that Curt McVee, State Director, and Mr. Gustafson had committed *"perjury,"* and that Respondent believed he could prove such perjury. The referenced letter emphasized, as above, the quoted words.

7. The referenced December 2, 1980 letter, in addition to stating Respondent's belief that he could prove Gustafson committed perjury, advises that there is no question but that Gustafson committed perjury in an identified affidavit, that Mr. Gustafson and others may find themselves criminally liable and that Gustafson is wrong if he believes he will walk away from "this townsite matter" unscathed. The letter, in its final paragraph requests Gustafson to take prompt action on a disputed townsite application by Mr. Moody, a non-native, with the inference that the application should be rejected. (This language was understood by both Mr. Allen and Mr. Gustafson to be a threat of criminal prosecution, although not one that in fact concerned them. The purpose of the threat was understood by Mr. Allen to be generally to get the Department of the Interior to do what Respondent wanted them to with regard to the townsite matter and to produce the immediate ejectment of Mr. Moody.)

8. Copies of the referenced December 2 letter were sent to two individuals who were representatives of Respondent's clients, Mr. Allen, Curt McVee, Bob Arnold (Associate State Director with the Department of Interior, in charge of ANCSA), the Secretary of the Interior and the Alaska Federation of Natives.

9. Respondent's December 2, 1980 letter was cross copied to the Alaska Federation of Natives, although it was not a party to the case and had not participated at all in the case. The February 5, 1981 letter to the Secretary of Interior was not cross copied to Mr. Allen. These choices were intended to maximize extraneous political pressure to achieve the end Respondent sought, and to interfere with Mr. Allen's opportunity to present the merits of his side of the case.

10. Respondent stated that those copies of the letter directed to employees of the Department of Interior, including Mr. Allen, were for the purpose of letting the people in the Department of the Interior know what a "liar and cheat" Mr. Allen was and to make Mr. Allen mad, or at least with the awareness that the letter would make Mr. Allen mad, because Respondent felt Allen "deserved it." Respondent said that *the copies to the Respondent's clients and the AFN were intended to let people know* "what kind of fraud, lying and cheating" were going on.

11. Respondent testified at the hearing that he considered amending his complaint in the *Aleknagik* case to allege a tort action against the four subject Interior Department personnel and that he told Mr. Allen in a conversation that he was "playing with fire and we (plaintiffs) could take his house if he didn't watch his step." The Committee found this type of communication inappropriate and reflective of Respondent's intent to harass Mr. Allen.

12. Mr. Gustafson's reaction to the December 2, 1980, letter was that Mr. Vollintine had "slipped a cog" or was drunk. Mr. Allen testified that after receipt of the letter he considered Mr. Vollintine "unbal-

anced." As a result of the letter Mr. Allen felt he could no longer deal directly with Respondent and any possibility of productive settlement negotiations with regard to the pending case were substantially diminished.

13. Respondent authored the letter dated February 5, 1981, to James Watt, Secretary of Interior (Exhibit B to Petition) in which he alleges that McVee is a "blatant racist," Jack Allen is "incompetent" and a "pathological liar," and that Gustafson and Sue Wolf are "lifer parasites." Although Mr. Allen was not copied with that letter, Respondent anticipated that a copy of the letter would eventually be made available to Mr. Allen.

14. Respondent had a subjective belief that the statements he made were true.

15. Respondent admitted during argument of counsel at the hearing before the Disciplinary Board of the Alaska Bar Association:

(a) although Respondent had prior dealings with Mr. Gustafson on other matters, the Moody entry application was the first non-native application passed upon by Mr. Gustafson with regard to the Aleknagik Townsite.

(b) at no time did Respondent move for an order holding either Mr. Allen or Gustafson or both in contempt for violating the terms of the Ninth Circuit injunction.

16. There is no evidence that Respondent attempted to determine if disciplinary action could be filed against Mr. Allen in any jurisdiction.

17. The facts adduced before the Area Hearing Committee and those apparent from the various documents filed and arguments made by the parties reflect an inability of Respondent to deal rationally with the subject matter on the persons involved in the decision making process. Respondent was unable or unwilling to deal with the problem in a rational or emotionally detached manner.

18. The only regret expressed by Respondent with regard to the statements and actions taken was to the effect that if he had known it would come to this he would have implied the same illegal activities but in a more carefully phrased manner. Respondent's stated that he was engaged in "trench warfare" and that his intemperate behavior should be excused.

Based on the above Findings of Fact, The Disciplinary Board makes the following

## CONCLUSIONS OF LAW

1. Respondent's letters of December 2, 1980 and February 5, 1981, are not privileged communications.

2. Respondent has committed misconduct in violation of Disciplinary Rule 7–105(A) by threatening in his letter of December 2, 1980, to present criminal charges (perjury charges) against George Gustafson, a defendant in pending litigation, solely to obtain an advantage in that litigation—prompt and favorable resolution of the Moody townsite application in a manner that would result in Mr. Moody's ejectment from the property. In particular, the Board finds that the language "I advise yourself, the BLM and Mr. Allen to tread softly with these Native townsites ... Yourself, McVee and Allen may well find yourselves criminally liable in this matter ... If yourself, McVee and Allen think you are going to walk away from this townsite matter unscathed, you are wrong." and "Please take prompt action on Mr. Moody's application..." indicative of the threat and request for favorable treatment.

3. Respondent has committed misconduct in violation of Disciplinary Rule 7–102(A)(1) by taking action on behalf of a client, *Aleknagik* plaintiffs, that he knew or should have known that such action would serve merely to harass or maliciously injure another, Jack Allen. The action referred to includes the underlining of inflammatory words; the wide dissemination of the letter of December 2, 1980, and the writing of the letter dated February 5, 1981 not copied to Mr. Allen, both of which would serve to harass or maliciously injure Mr. Allen.

4. Respondent has committed misconduct in violation of Disciplinary Rule 1–

102(A)(5) by engaging in conduct that is prejudicial to the administration of justice. He failed to place the question of Mr. Allen's or the Interior Department's conduct before the court in a contempt proceeding or before any disciplinary board and instead copied the letter of December 2, 1980, to the Alaska Federation of Natives, not a party to the case, and did not copy the letter of February 5, 1981, to Mr. Allen, in an attempt to maximize extraneous political pressure and to interfere with Mr. Allen's ability to handle the merits of his side of the case.

5. The Board members are mindful of possible First Amendment rights in this case. They have read the case of *Hirschkop v. Snead*, 594 F.2d 356 (4th Circuit, 1979) in which the court states:

> Drawing on many prior decisions, Mr. Justice Powell formulated a two-step test in *Porcunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), for determining the constitutionality of governmental restrictions of speech:
>
> First, the regulation . . . in question must further an important or substantial governmental interest unrelated to the suppression of expression . . . Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. (at 363)

The Board finds that there is a substantial governmental interest in promoting the administration of justice, and that the decision reached herein does not violate the standard of *Procunier*.

### RECOMMENDED DISCIPLINE

The Hearing Committee made the following recommendation:

The Committee has been advised that Respondent has not previously been subjected to any disciplinary actions and therefore first considered utilization of a private reprimand pursuant to Alaska Bar Rule 12(d). Several factors weigh strongly against that form of discipline, the most important of which is the fact that Respondent would be unaffected by that form of discipline because . . . it would not serve in any way to cause Respondent to appreciate the nature of his conduct. That reasoning is based primarily upon Respondent's testimony and observations of his demeanor during the hearing.

Respondent's deportment at the hearing and his testimony continued a consistent pattern, vis-a-vis the correspondence of December 2, 1980, and he in fact expressed his view that the correspondence complained of was not proper. He has failed throughout to recognize any impropriety insofar as the correspondence is concerned. His utterances at the hearing clearly indicated a lack of perspective and judgment, and he freely offered opinions as to the lack of good faith of opposing parties, their attorney and the trial judge. These individuals were generally termed by Respondent to be either racist or actively hostile to interests of natives. Publication of this type of correspondence or utterance severly damages the public's perception of the judicial system. As an attorney, Respondent should be aware of proper forums that are available for presenting grievances of this type and he has failed to utilize them.

It further appears, in view of *Gregoire v. National Bank of Alaska*, 413 P.2d 7, 43–44 (Alaska 1966) which involved attorney comments in court pleadings which were for less vituperous than those involved in the present case; that such misconduct, even in the absence of threatened criminal action, is a serious violation of ethical standards deserving of public censure by the court.

The Board hereby adopts the recommendation of the Hearing Committee for public censure in light of the severity of the misconduct under the *Gregoire* standard, and because the Board feels that in this particular case, such discipline is necessary.

DATED this 24 day of June, 1982.

/s/ Harold M. Brown
HAROLD M. BROWN, Chair
/s/ William B. Rozell
WILLIAM B. ROZELL

/s/ Elizabeth Page Kennedy
ELIZABETH P. KENNEDY,
Recorder

RABINOWITZ, Justice, joined by MATTHEWS, Justice, dissenting.

I disagree with the court's conclusion that public censure of Vollintine is warranted. In my view, a private reprimand would be a sufficient sanction. My decision is based, in large part, upon considerations expressed in the separate report filed by two members of the Disciplinary Board, with which I concur.[1]

First, I disagree with the court's finding that the December 2, 1980 letter violated Disciplinary Rule 7–105(A), which prohibits a lawyer from "threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter." Nowhere in the letter did Vollintine state that he would press charges unless Gustafson, Allen or other Department of Interior officials took certain specified steps in the *Aleknagik* or Moody cases. It is not at all apparent what advantage, if any, Vollintine sought to gain by pointing out that those parties might find themselves criminally liable for their transgressions. Absent such proof, I would hold that no violation of DR 7–105(A) occurred. For example, in *Decato's Case,* 117 N.H. 885, 379 A.2d 825 (1977), the New Hampshire Supreme Court was called upon to decide whether the following portion of a letter constituted a violation of DR 7–105(A):

"In New Hampshire, it is a crime to obtain services by means of deception in order to avoid the due payment therefore [sic]. Without any proof on your part, you have chosen to stop payment on a check after it was made for the payment of services. Unless you communicate directly with me and give me some proof that the damages sustained to your son's International Harvester were a result of the failure of Decato Motor Sales, Inc., I shall consider filing a criminal complaint with the Lebanon District Court against your son for theft of services."

*Id.* at 826. The court rejected the allegation that the letter was sent "solely to obtain an advantage in a civil suit," and dismissed the complaint alleging that Decato had violated DR 7–105(A):

The mere mention of possibly filing criminal charges does not in itself suggest that the statement was made in an effort to gain leverage in a collection suit .... At no time did Mr. Decato demand or request payment and therefore this court cannot find by clear and convincing evidence that his sole purpose was to "obtain an advantage in a civil suit."

*Id.* at 827. Vollintine's letter to Gustafson was even less directed than the language in Decato's letter. Thus, I dissent from the court's conclusion that Vollintine's letter of December 12, 1980 constituted an infraction of DR 7–105(A). I cannot agree that there has been a sufficient showing that Vollintine's purpose in writing it was to "obtain an advantage in a civil suit."[2]

1. Substantial portions of the separate report have been included in this opinion. The separate report has been included in this opinion. The separate report was authored by Board member Hugh G. Wade and was concurred in by Board member Andrew J. Kleinfeld. This separate report is reproduced in the appendix to this dissent.

2. *Compare In re Craddick,* 602 P.2d 406 (Alaska 1979). In *Craddick,* we did observe that it was not necessary for a "threat" within the meaning of DR 7–105(A) to be directly stated, and that the one arising by "implication and innuendo" was sufficient to constitute an infraction of the provision. *Id.* at 408 n. 6. However, in *Craddick,* the offensive language prompted an attorney for the threatened party to conclude that "criminal charges were going

to be filed against his client as a consequence of her refusal to admit to respondent her theft of a substantial sum of money and agree to its restitution." *Id.* at 408 n. 6. Thus, specified demands accompanied the threat in that case.

*See also In re Mekler,* 406 A.2d 20, 22–23 (Del.1979) (per curiam) (Court publicly censured attorney who threatened a piano company with criminal action if it did not return down payment on repossessed piano and thereafter drafted the specifications included in the criminal complaint; after the arrest, the respondent suggested the charge would be dismissed if the threatened party returned the $1,600); *People ex rel. Gallagher v. Hertz,* 198 Colo. 522, 608 P.2d 335 (1979) (attorney acting as receiver for partnership threatened criminal prosecution unless party repaid $4,200 attorney

Similarly, I do not agree with the court that the record supports a finding that Vollintine violated DR 1–102(A)(5), which provides that "A lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice." Specifically, I do not believe that the letter had any significant impact on the possibility of settlement negotiations. The record shows that the positions of the parties were so dramatically opposed and the attitude of the Department of Interior so intrasigent with regard to the townsite issue that no potential for settlement existed when the letter was written. Thus, the letter could not be said to have been prejudicial to the administration of justice within the meaning of DR 1–102(A)(5).

Finally, I disagree with the majority's conclusion that Vollintine violated DR 7–102(A)(1), which provides, "A lawyer shall not . . . take . . . action on behalf of his client, when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." The Board specifically found that "[r]espondent had subjective belief that the statements he made were true," that Vollintine in fact believed that his clients were being treated unfairly. In considering this case, I think it is important to recognize Vollintine's rela-

tive inexperience. Thus, in my view, it is not at all apparent that Vollintine wrote the letters "merely to harass or maliciously injure" the officials named therein.

Nevertheless, I do agree with the court that the tone and content of the letters were deplorable and demonstrated that Vollintine lacked the objectivity and temperament required of a member of the Bar. Vollintine has demonstrated a complete lack of understanding of, or respect for, the aspirations expressed in Ethical Considerations 7–37,[3] 7–38,[4] and 7–39.[5] For this reason, I would conclude that Vollintine has violated DR 1–102(A)(6) by engaging in "conduct that adversely reflects on his fitness to practice law."

In my view, a private reprimand would be sufficient to impress upon Vollintine the gravity of his misconduct. It must be borne in mind that the letters comprising the subject matter of this proceeding were written during the course of very bitter, protracted and understandably frustrating litigation. The tone of the letters probably reflected quite accurately the position of some of Vollintine's clients. Under these circumstances, it strikes me as unnecessary and counter-productive to impose upon Vol-

claimed was due to the partnership and then followed through on threat, his sole motive being promotion of his interest in the civil matter); *Libarian v. State Bar,* 38 Cal.2d 328, 239 P.2d 865 (1952). The direct, unequivocal "requests for action" in these cases contrast markedly with the majority's observation that it "can perceive of no purpose for the letter other than to influence the B.L.M.'s handling of a non-Native application . . . the rejection of which would provide an advantage to Vollintine's clients." Majority Op. at 758.

3. Ethical Consideration 7–37 provides:
    In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer in his conduct, attitude and demeanor towards opposing lawyers. A lawyer should not make unfair or derogatory reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.

4. Ethical Consideration 7–38 provides:
    A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives timely notice to opposing counsel of his intention not to do so. A lawyer should be punctual in fulfilling all professional commitments.

5. Ethical Consideration 7–39 provides:
    In the final analysis, proper functioning of the adversary system depends upon cooperation between lawyers and tribunals in utilizing procedures which will preserve the impartiality of tribunals and make their decisional processes prompt and just, without impinging upon the obligations of lawyers to represent their clients zealously within the framework of the law.

lintine the stigma inherent in a public censure.[6]

## APPENDIX TO DISSENT

### BEFORE THE ALASKA BAR ASSOCIATION

| | |
|---|---|
| In the Disciplinary Matter | ) |
| Involving | ) |
| | ) |
| JAMES F. VOLLINTINE, | ) |
| | ) |
| Respondent. | ) |
| | ) |

ABA File No. 80–140

### SEPARATE REPORT OF HUGH G. WADE

## FINDINGS OF FACT

I concur with Findings of Fact 1, 2, 3, 4, 6, 8, 9, 10, 11, 13, 14, 15, 16, and 18.

### Finding 5

With regard to Finding of Fact 5, I believe that the Disciplinary Board's Finding inaccurately characterizes the relationship between Jack Allen on the one side and George Gustafson, Curt McVee and the Secretary of the Interior on the other, as that of an attorney and clients. Mr. Gustafson, Mr. McVee and the Secretary of Interior are not, and were not Mr. Allen's clients with regard to the application of Mr. Moody for Lot 7 and 8, Block 8, Tract A of Aleknagik Townsite. It is important, I think to recognize that Mr. Allen, Mr. Gustafson, Mr. McVee and the Secretary are all essentially co-employees of the United States Government. As solicitor Mr. Allen serves both as an administrator and as a source of legal advice.

In this regard it is important also to distinguish between the on-going civil litigation *Aleknagik Natives Limited v. Andrus,* Civil Action No. A77–200 United States District Court for the District of Alaska, and the administrative proceeding relating to the application of Roland Moody for two lots in the Aleknagik Townsite. These two distinct proceedings differed in nature, were concurrently on-going, and create a problem of analysis because Mr. Allen's role was radically different in the one as opposed to the other. With regard to the Moody application, both Mr. Allen and Mr. Gustafson were simply performing administrative functions as members of the Interior Department team charged with implementing the Alaska Native Townsite Act. They did not stand in an adversary position with regard to the Respondent or his clients. Their functions were not judicial in nature. I am not satisfied that any kind of interference with their performance of those duties can properly be characterized as "prejudicial to the administration of justice".

### Finding 7

With regard to Finding of Fact 7, I would reject the contention that the Respondent's letter of December 2, 1980, or any part thereof, was a threat within the meaning of Disciplinary Rule 7–105.

### Finding 12

With regard to Finding of Fact 12, I find that Mr. Gustafson's reaction to the letter is largely irrelevant, and do not believe that the letter had any impact whatsoever on the possibility of settlement negotiations. It appears to me that the positions of the parties were so diametrically opposed and the attitude of the Interior Department so intransigent with regard to the Townsite issue, that no possibility of productive settlement negotiations existed at the time that the letter was written.

### Finding 17

Finding of Fact 17 is troublesome to me as it appears to deal with matters which are outside the issues which were presented on Appeal. Further, I feel that it fails to give proper import to Finding of Fact 14 by which the Board acknowledged that the Respondent subjectively believed that Mr. Allen and Mr. Gustafson were treating their clients in a dishonest and unfair manner. In considering this case, I think it is important to recognize the relative inexperience of the Respondent as well as the fact that the realization that government agencies and government officials are not necessarily either honest or fair can be a shattering experience. I, too, was troubled by the

---

**6.** I am in agreement with the court's resolution of the jurisdictional, freedom of speech, and due process issues which Vollintine raised in this appeal.

Respondent's response to the disciplinary process and his conduct before the Area Hearing Committee, but I am not prepared to find that these reflect an inability to deal rationally with the process. It is important to note that the Board has rejected the Area Hearing Committee's Finding of Fact 14 to the effect that the subject letters are not atypical of Respondent's ordinary conduct. There is no direct evidence that the conduct which is the subject of this proceeding is representative of the Respondent's practice with regard to other unrelated matters. In that regard I have forced myself to accept at face value the Respondent's statements during the hearing on appeal to the effect that his antagonistic attitude toward Mr. Allen is not typical of his relationship with opposing counsel. I admit to substantial skepticism on that issue simply because the Respondent's vituperation in this case is so extensive and seems to flow so naturally that it almost cannot be conceived that it has not been practiced extensively in the past.

I found the tone and content of the Respondent's letters of December 2, 1980, and February 5, 1981, to be deplorable. My review of the transcript of the hearing before the Area Hearing Committee left me predisposed to believe that the Respondent, at best, lacked the objectivity and temperament which are required of a member of the Bar and, at worst, that the Respondent might suffer from some form of paranoia. It is essential that the Respondent be brought to the realization that this was the common, and, indeed, the natural reaction not only of those people to whom his letters were addressed, but also of virtually every person who has had occasion to read those letters during the course of these proceedings. If, through these proceedings, the Respondent can be brought to that realization, the process will have served its purpose. The converse is also true.

I find that the Respondent has demonstrated a total lack of understanding of, or respect for the aspirations which are expressed in Ethical Considerations 7–37, 7–38, and 7–39. For that reason I find that the Respondent has violated Disciplinary Rule 1–102(6) in that he has engaged in conduct that adversely reflects on his fitness to practice law.

Despite my negative predisposition, I was very favorably impressed by the Respondent's conduct and argument during the hearing on his appeal from the Report of the Area Hearing Committee. Furthermore, I think it is appropriate to consider that the conduct which is the subject matter of this proceeding arose during the course of a very bitter, very protracted and understandably frustrating litigation. I suspect that the tone of the Respondent's letters rather accurately reflected the position of some if not all of his several clients. For all of these reasons, I believe that a private reprimand would suffice to accomplish the purposes of these proceedings. Conceding the existence of factors which argue against that form of discipline, I simply feel that it is unnecessary under the circumstances of this case (and possibly counter-productive) to impress upon the Respondent the stigma which is inherent in a public censure.

I also note that our Report fails to deal in any manner with the reasons for the Board's rejection of certain of the Area Hearing Committee's findings and with the issues raised by the Respondent's objections to the manner in which the Hearing Committee was organized. I believe that these matters should be addressed directly in our Report.

RESPECTFULLY SUBMITTED this 27st day of May, 1982.

/s/ Hugh G. Wade
HUGH G. WADE

I concur with Mr. Wade's report.

/s/ Andrew J. Kleinfeld
ANDREW J. KLEINFELD

Dated: June 14, 1982